Date signed June 19, 2009



_____
PAUL MANNES
U. S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

| | |
|---|---|
| In Re: | |
| Robert F. Rood, IV, | Case No. 08-17199PM |
| Debtor. | Chapter 7 |
| | |
| Gary A. Rosen, Trustee, and | AP No. 09-00188PM |
| Southern Management Corporation | |
| Retirement Trust, | |
| Plaintiffs, | |
| | |
| vs. | |
| | |
| Robert F. Rood, IV, *et al.* | |
| Defendants. | |

## MEMORANDUM OF DECISION

This case is before the court on the motion of Gary A. Rosen, Chapter 7 Trustee, and the Southern Management Corporation Retirement Trust ("Southern Management"), for an order holding the Debtor, Robert F. Rood, IV ("the Debtor"), and an associated company, Kore Holdings, Inc. ("Kore"), in civil and criminal contempt.  The matter came before the court for hearing on June 18, 2009. The court views this matter in the light of the evidence received in the five-day hearing of the motion filed by the Chapter 7 Trustee and Southern Management for a temporary restraining order and a preliminary injunction.

Southern Management is the holder of a non-dischargeable judgment entered by default against the Debtor in the sum of $13,876,353.47 arising as a result of various fraudulent schemes to misappropriate funds that were to be invested by the Debtor on behalf of Southern Management.  *See* A.P. No. 09-00058PM.   The Debtor is a conviced felon having pleaded guilty in the case of *State of Maryland v. Robert Rood, IV*, Criminal No. 111718, in the Circuit Court for Montgomery County,

Maryland.  That case involved a similar fraudulent scheme involving Village Bar & Grill, Inc., where $205,000.00 was wired to the Debtor for the purpose of obtaining a letter of credit and misappropriated by him.  The court is advised that the United States Attorney for the District of Columbia is considering a second criminal proceeding against the Debtor.  The Debtor's waiver of discharge was approved by Order entered March 12, 2009.

In the course of a hearing on the motion for preliminary injunction, substantial evidence was admitted to show the diversion of funds belonging to Southern Management that were misappropriated by the Debtor into various entities controlled by him, including Kore.

Kore is a non-trading, non-reporting public corporation that has no ongoing business and is not current in its Security & Exchange Commission document filings.[1]  The Debtor is the Chairman of the Board and Chief Executive Officer of Kore.  The corporation's value appears to be solely as a tool for a reverse merger and in this instance appears to be poised to continue the fraudulent schemes of the Debtor and his cohorts.

In an effort to trace the business activities of Kore, the moving parties undertook a path of discovery particularly to ascertain the contents of an agreement said to be entered in November 2008.  The record is replete with the failure of the Debtor to produce the document despite repeated subpeonaes therefor and requests for production.  Ultimately, the agreement dated December 28, 2008, with Jet Stream Voltage, Inc., was produced on April 28, 2009, and was introduced into evidence at the contempt hearing as Plaintiffs' Exhibit 19 .  The court finds that the reason for the non-production was to conceal the transaction and to permit the continuation of Defendants' schemes.  The agreement provides for the transfer of the "wind-related assets" of Arcadian Renewable Power, Inc., a wholly owned subsidiary of Kore, in exchange for a twenty percent share of the preferred and common stock of Jet Stream Voltage, Inc.  According to the agreement, Jet Stream Voltage, Inc. was organized in December 2008.  The agreement was signed by the Debtor on behalf of Kore and by C. Timothy Jewell ("Jewell") as Chairman and Chief Executive Office of Jet Stream Voltage, Inc.  At the time Jewell was also the Chief Operating Officer of Kore.  The agreement appears designed to place the dubious assets of Arcadian Renewable Power, Inc. out of the reach of Kore's creditors.

---

[1]  According to public records, Kore's stock currently trades for a price of $0.1 to $0.2 per share with a volume of less than 1,700 shares per day.

"The purpose for which the [civil] contempt sanction is imposed is remedial and intended to coerce the contemnor into compliance with court orders or to compensate the complainant for losses sustained . . . ." *Buffington v. Baltimore Co.*, 913 F.2d 113, 133 (CA4 1990).  Criminal contempt sanctions are intended "to vindicate the authority of the court by punishing the contemnor and deterring future litigants' misconduct . . . ." *Id*.  The court finds no purpose would be served by the imposition of a civil contempt sanction in this situation .  The document that was the main target of the Plaintiffs' efforts has finally been produced, and the court sees little merit to adding the imposition of a fine, however substantial it may be, to the existing judgment held by Southern Management.[2]

While the Bankruptcy Court has the power to enter an order for civil contempt, *In re Walters*, 868 F.2d 665, 670 (CA4 1989), this court has no similar jurisdiction over matters of criminal contempt.  *See In re Akl*, 2008 WL 5102277 (BC D.C. September 4, 2008).  As was explained in *Lucre Mgmt. Group, LLC v. Schempp Real Estate, LLC (In re Lucre Mgmt. Group, LLC)*, 365 F.3d 874, 876 (CA10 2004) *quoting Int'l Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 827-28 (1994),

> In civil contempt, "the contemnor is able to purge the contempt and obtain his release by committing an affirmative act, and thus carries the keys of his prison in his own pocket." (citation omitted).  On the other hand, "a completed act of disobedience that the contemnor cannot avoid" is criminal in nature.

The court believes that it lacks the power to hear and determine matters of criminal contempt other than contempts comitted in its presence.  *See Matter of Hipp, Inc.*, 895 F.2d 1503, 1509 (CA5 1990).  Therefore, the question of criminal contempt must be presented to the United States District Court for the District of Maryland.

To that end, the court will hand up a Certificate of Criminal Contempt to the United States District Court for the District of Maryland.

cc:    Plaintiffs
       Plaintiffs' Counsel
       Defendants
       Defendants' Counsel
       United States Trustee

**End of Memorandum**

---

[2] Southern Management has taken the laboring oar in these contempt and injunction proceedings.