IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

IN RE: ROBERT F. ROOD, IV,          :
et al.
_____     :
GARY A. ROSEN, TRUSTEE, et al.
    Appellants                      :

    v.                              :   Civil Action No. DKC 10-0995

KORE HOLDINGS, INC., et al.          :
    Appellees
                                     :

**MEMORANDUM OPINION**

Pending before the court is an appeal filed by Chapter 7 Trustee Gary A. Rosen and Southern Management Corporation Retirement Trust ("SMCRT") from a March 12, 2010, order of the United States Bankruptcy Court for the District of Maryland granting summary judgment in favor of Robert F. Rood, III, and Grace Ann Rood and denying their cross-motion for summary judgment. Because the facts and legal arguments are adequately presented in the briefs and record, oral argument is deemed unnecessary. *See* Fed.R.Bankr.P. 8012; Local Rule 105.6. For the reasons that follow, the order of the bankruptcy court granting summary judgment will be affirmed in part and reversed in part, the appeal from the denial of summary judgment will be dismissed, and the case will be remanded for further proceedings.

I.    **Background**

On May 29, 2008, Robert F. Rood, IV ("Debtor"), filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code.   At that time, Debtor owned and held one hundred percent interests in a number of business entities (collectively, "the Debtor Entities"), including Blue Horseshoe Portfolio Services, LLC ("Blue Horseshoe"), Level One Capital Partners, LLC ("Level One"), and The Source, LLC ("The Source"). On December 29, 2008, the bankruptcy court administratively consolidated the Debtor Entities' cases with Debtor's bankruptcy case.

On April 1, 2009, Mr. Rosen and SMCRT (together, "Appellants") commenced an adversary proceeding within the bankruptcy case by filing a complaint for injunctive relief, declaratory relief, and damages against fifteen defendants: Debtor, Kore Holdings, Inc. ("Kore"), seven wholly-owned Kore subsidiaries – *i.e.*, Arcadian, Inc., First Washington Financial Corporation, Level One Mortgage Capital, Mortgage American Bankers, Source Bio-Plastics, Inc., Sunvolt, and Whiplash Motor Sports, LLC – Charles Timothy Jewell, Nik Hepler, Warren A. Hughes, Jr., First Washington Equities, LLC, and Debtor's parents, Grace Ann Rood and Robert F. Rood, III (together,

"Appellees" or "Mr. and Mrs. Rood").[1]   (ECF No. 1, Attach. 4).
The complaint alleged a Ponzi scheme orchestrated by Debtor,
who, with the assistance of the individual defendants,
misappropriated millions of dollars entrusted to him by SMCRT as
loan investments by diverting the money through an elaborate
network of business entities under his control.   As to
Appellees, the complaint set forth causes of action for fraud,
conversion, civil conspiracy, unauthorized post-petition
transfer of assets, and fraudulent conveyance.   As relief,
Appellants sought an accounting and turnover of estate property,
injunctive relief, and a declaration that the corporate
defendants were the alter egos of Debtor and the individual
defendants.

On the same date they filed their complaint, Appellants
also filed an emergency motion for temporary restraining order,
preliminary injunction, and request for emergency hearing.   On
April 2, 2009, the bankruptcy court held a hearing on the
emergency motion for temporary restraining order.   At the outset
of that hearing, counsel for Mr. Rosen advised the court that an
agreement had been reached with respect to Appellees:

> Your Honor, with respect to Grace and
> Robert Rood, III, they will agree pending
> further order of this Court to not transfer

---

[1] Throughout this opinion, Appellee Robert F. Rood, III,
will be referred to, individually, as "Mr. Rood."   His son,
Debtor Robert F. Rood, IV, will be referred to as "Debtor."

> or encumber any of their property. They
> will agree to make no transfers, direct or
> indirect, to their son, the debtor, Robert
> Rood, IV, or Kore Holdings, Inc. or any
> affiliates of Kore Holdings, Inc., and they
> will agree not to transfer a Dodge Viper
> which is an asset the trustee believes is an
> asset of the debtor's estate. Mr. Rood,
> III, has asserted that he owns that vehicle.

*In re Rood*, 426 B.R. 538, 544 (D.Md. 2010). At the conclusion

of the hearing, the bankruptcy court issued an order temporarily

restraining the remaining defendants, with the exception of Mr.

Jewell, from "[t]ransferring, encumbering, or impairing any

property (real or personal) in their possession, custody or

control," and from "engaging in any business operations,

directly or indirectly, that in any way involves the sale,

transfer, impairment or encumbering of any asset of their

businesses." *Id*. at 544-45. The order set a date of April 13,

2009, for a hearing on the motion for preliminary injunction.

Shortly thereafter, Appellees filed a motion to dismiss.

(ECF No. 1, Attach. 5). At the conclusion of a May 28, 2009,

hearing, the bankruptcy court orally granted in part and denied

in part Appellees' motion. Specifically, the court dismissed

five counts as to both Mr. and Mrs. Rood – *i.e.*, those alleging

fraud, civil conspiracy, post-petition transfer of assets,

accounting, and declaratory judgment/alter ego – and the count

alleging conversion as to Mrs. Rood alone. The bankruptcy

court's oral ruling was followed by a written order dated June

4

5, 2009.   Mr. Rosen and SMCRT noted an appeal from that decision, and this court subsequently affirmed.   *See In re Rood*, 426 B.R. 538 (D.Md. 2010).[2]

The preliminary injunction motion was considered, along with a number of other motions, at court proceedings held on a series of dates in or around April 2009.   On one of those dates, April 29, 2009, Appellants withdrew their request for a preliminary injunction as to Appellees after Mr. and Mrs. Rood agreed, on the record, not to make any further transfers to Debtor or any business entity affiliated with him.   On August 19, 2009, the bankruptcy court issued a memorandum of decision granting Appellants' motion for preliminary injunction as to the remaining defendants.   The court found, in relevant part:

> Jewell and [Debtor] had no apparent source of income other than the SMCRT funds. . . . [Appellants' expert's] testimony established that $1,083,803.06 was paid to [Debtor] out [of] the Blue Horseshoe and Level One accounts and these same accounts were the source of $1,281,629.55 paid for the benefit of Kore Holdings, Inc., and its subsidiaries. . . . There was no evidence of consideration for any payment made from the Blue Horseshoe and Level One funds to the Rood entities.   These entities handled the transferred funds as their own.
>
> The record keeping by the Rood entities (to the extent there was such) was wholly

---

[2] By the same opinion and order, the court dismissed an appeal from the bankruptcy court's subsequent grant of a preliminary injunction filed by Kore, a number of the Kore subsidiaries, and Mr. Jewell.

5

> inadequate. There were no formal records or
> financial statements for Blue Horseshoe or
> Level One entities, and such information
> that had been supplied to SMCRT and the
> Receiver did not match actual events that
> could be verified. The Rood entities
> operated in no less than 40 bank accounts.
> The payroll records of the various entities
> were commingled, and such compensation as
> was paid to the Rood associates was
> typically paid outside of the payroll.
> Generally, what [Debtor] would do is take
> money out of Blue Horseshoe and Level One
> accounts and convert the funds to money
> orders. In short, [Debtor] used the SMCRT
> funds that were entrusted to him to invest
> on its behalf as his personal piggy bank.

*In re Rood*, Adv. No. 09-0188PM, 2009 WL 2923429, at *2
(Bankr.D.Md. Aug. 19, 2009) (footnote omitted).

On February 5, 2010, Appellees moved for summary judgment
as to the six remaining counts against them. (ECF No. 1,
Attach. 11). Appellees primarily challenged the opinion of
Appellants' expert that a series of purchases, payments, and
wire transfers made by Blue Horseshoe, Level One, The Source,
and Kore were fraudulent conveyances to Appellees that were
recoverable by the bankruptcy estate. Appellees argued that the
evidence in the case conclusively showed that the purchases
(*e.g.*, of vehicles and furniture) and some of the payments
(*e.g.*, of rent and legal fees) were improperly attributed to
them. While they conceded that they received a number of checks
and/or wire transfers from the Debtor Entities, they argued that
these payments were "fair consideration" for an antecedent debt

6

owed to them by Debtor.  (ECF No. 1, Attach. 13, at 28, 32-33).

Specifically, they asserted that Debtor incurred a $250,000 debt

to them by virtue of payments they made on his behalf in or

around 2004 to cover a bounced check and to satisfy a defaulted

(and fraudulently obtained) loan obligation.  According to

Appellees, even assuming they received all the property and

money attributed to them by Appellants' expert:

> [t]he entirety of the transfers that
> [Appellants'] Expert Report reflects as
> having been made to or for the benefit of
> [Appellees] during the period from January
> 31, 2006, through and including December 21,
> 2007, are less than the amounts that the
> Debtor owed to [Appellees] and did not
> satisfy the antecedent debt that the Debtor
> owed to [Appellees].  Fair consideration was
> provided for the transfers.

(ECF No. 1, Attach. 13, at 29).

Appellees anticipated that Appellants would respond by

arguing that "the debts were owed by the Debtor, but that the

payments came from the Debtor's entities and, therefore, fair

consideration was not provided by the entities that made the

payments."  (*Id*.).  They addressed that hypothetical argument as

follows:

> [Appellants] have consistently argued, and
> their Expert has concluded, that the Debtor's
> entities are all "alter egos" of the Debtor.
> The deposition testimony of the Trustee and
> SMCRT further bears this out.  Indeed,
> [Appellants] have obtained injunctions
> against a number of the defendants in this
> case by making the "alter ego argument."

7

> Having made that argument, [Appellants] are
> now precluded from asserting that the Debtor
> and his entities are not alter egos in
> response to [Appellees'] Motion. The
> preclusion results from the application of
> the doctrine of judicial estoppel.

(*Id.*).

On or about February 25, 2010, Appellants filed an opposition to Appellees' motion and a cross-motion for summary judgment. (ECF No. 1, Attach. 32). Appellants argued that Appellees' concession that they received certain transfers from the Debtor Entities was "not only fatal to [their] motion for summary judgment, but warrant[ed] the entry of summary judgment in favor of [Appellants]." (ECF No. 1, Attach. 31, at 13). Appellants attached to their memorandum the declaration of their expert, Suzanne Hillman, who opined that "[t]here was no consideration discovered for these transfers." (ECF No. 1, Attach. 34, at ¶ 23). According to Appellants, this assertion, and the expert report upon which it relied, was "in direct dispute with the Parents' novel attempt at establishing fair consideration" and this "dispute of fact [was] fatal to [Appellees'] request for summary judgment." (ECF No. 1, Attach. 31, at 14).[3] Appellants argued that Appellees' alter ego theory

---

[3] In her expert report, Ms. Hillman explained that her effort to locate the assets allegedly misappropriated by Debtor was complicated by the fact that Debtor "was derelict with respect to keeping even primitive financial records for all the entities," and that, by Debtor's own admission, "business

8

was flawed because "piercing the corporate veil does not effect a change in the ownership of assets or the title to assets"; rather, "[i]t merely provides additional parties against whom liability may be established based upon their conduct." (*Id.* at 22). Because "[t]here [was] no dispute that the funds [transferred to Appellees] were originally the property of the Debtor Entities" and Appellees "do not claim that the Debtor Entities owed them anything," Appellants asserted, "there was a total and undisputed failure of consideration for [the]

---

records and computers were destroyed when he and his entities were evicted from both his business office and his residence in approximately December 2008." (ECF No. 1, Attach. 49, at 3). Moreover, "[n]o income tax returns, annual franchise reports, etc. for any of the entities or [Debtor] himself were found and [Debtor] stated that none had been prepared or filed for 'years.'" (*Id.* at 4). Thus, Ms. Hillman attempted to reconstruct the business records of Debtor and his affiliated entities from whole cloth by, *inter alia*, inspecting computer records and documents located at Debtor's business office and personal residence on two separate occasions, and by examining records produced by financial institutions for accounts in the name of the business entities pursuant to subpoenas. In summarizing her findings, Ms. Hillman opined that "[t]he Debtor Entities are nothing more than Alter Egos for the Debtor Rood and the Defendants. My examination of the accounting and financial reports support that [Debtor] makes no distinction between himself and his business entities." (*Id.* at 6).

As to Appellees, Ms. Hillman purported to have "determined with a reasonable degree of certainty that Grace Ann Rood received fraudulent transfers directly or paid on [her] behalf, from the 5 known bank accounts, totaling $222,495.97 for which there was no fair consideration." (*Id.* at 12). She further concluded that Mr. Rood received "fraudulent transfers totaling . . . $132,531.49 for which there was no fair consideration." (*Id.*). The transfers attributed to Appellees were identified in two attached exhibits. (*Id.* at Ex. 6 and 7). In many instances, the same line items are attributed to both Mr. and Mrs. Rood.

transfers." (*Id.*). Thus, they argued, "[t]urnover of those funds by the Parents and an entry of summary judgment against the Parents should be ordered." (*Id.*).

On March 11, 2010, the parties presented oral argument on their cross-motions for summary judgment. Appellees' counsel initially observed that the transfers identified by Ms. Hillman consisted of "checks made payable to Grace Rood or wires to Grace Rood," on the one hand, and "monies that were payable to third parties that are being attributed to my client[s]," on the other. (ECF No. 5, Attach. 1, at 7). Citing Appellees' "unrebutted" declarations, counsel challenged that roughly $10,000 in payments for furniture delivered to a home leased by Debtor, but co-signed by Mrs. Rood, was improperly attributed to Appellees, as were payments of rent at that home. (*Id.* at 7-8). With respect to a "Cadillac XLR" that was "titled in the name of Kore," Appellees contended, "[i]t is undisputed that the vehicle was turned over to [Mr.] Rood voluntarily," that Mr. Rood surrendered it upon demand of the FBI in December 2008, and that there had been no previous demand for Mr. Rood to return the vehicle. (*Id.* at 9). Appellees further asserted that a $5,000 payment from one of the Debtor Entities to satisfy a legal debt of a business owned by Appellees was improperly attributed to them.

After separately addressing the conversion count of the complaint, counsel turned his attention to the counts alleging fraudulent conveyance:

> That largely leaves us, Your Honor, with the avoidance actions and . . . I think there's no real dispute as to the important facts in this case. . . . The evidence shows, Your Honor, that in 2004 the debtor used my client [Mr.] Rood's social security number to purchase two Mercedes vehicles for a total purchase price of $240,000. The evidence establishes, Your Honor, that my clients, in order not to be adversely affected by the loan that was outstanding on their credit, or Mr. Rood's credit specifically, paid that loan for the benefit of the debtor. At that point the debtor became indebted to my clients in the amount of $240,000.
>
> The amounts that are attributed to my clients for purposes of the fraudulent conveyance actions are less than $240,000, and all of those transfers occurred after the $240,000 advance by my clients on behalf of their son. Their affidavits establish that after the filing of the bankruptcy case, the debtor remained indebted to my clients, that it had not been satisfied.
>
> So the question becomes are the transfers that are attributed to my clients, even if you accept that all of them are properly attributed to my clients[,] and I think we've established facts to show that with the exception of about $35,000 at most they are not, but even if we accept for purposes of this argument that the entirety of the $222,495.97 were transfers to my clients, those transfers are exceeded by the amounts that my clients had advanced to their son. As a result, we have consideration that is provided for those

transfers if we can show that the transfers
were made by the debtor.

(ECF No. 5, Attach. 1, at 15-16).

While the wire transfer and checks at issue were paid by
three of the Debtor Entities – namely, The Source, Level One,
and Blue Horseshoe – Appellees observed that Appellants had
argued throughout the proceedings that "those entities are the
alter egos . . . of the debtor" and that they "did not exist as
businesses that were authorized to conduct business in the state
of Maryland at the time these transfers were made." (*Id.* at
17). Accordingly, they argued, "any transfers that were made by
those alter egos must be viewed as transfers that were made by
the debtor himself and this is where judicial estoppel comes
into play." (*Id.*). Upon further observing that the bankruptcy
court had already "granted relief based upon [Appellants']
assertion of alter ego," *i.e.*, the grant of a preliminary
injunction against Kore and the Kore subsidiaries, Appellees
argued that Appellants "cannot turn around now and say well, we
don't really mean that." (*Id.* at 18). In fact, counsel
conceded,

> [i]f they can do that . . . there is not a
> defense to the fraudulent conveyance actions
> to the extent that it can be proved that
> payments were made to or for the benefit of
> my clients, but under the doctrine of
> judicial estoppel, the [Appellants]
> absolutely and positively must be precluded
> from arguing anything contrary to the fact

12

> that The Source, Blue Horse Shoe and Level
> One are one and the same as the debtor, and
> once the Court as a matter of law accepts
> that proposition, which based on the facts
> of this case . . . [is] undisputed[,] I
> believe the Court . . . has no choice but to
> find that the $240,000 that was advanced
> before the transfers of less than $240,000
> are adequate consideration for the transfers
> and as a result there cannot be a fraudulent
> conveyance under either state law or Section
> 548 as this relates to constructive fraud.

(*Id.* at 18-19).

In response, counsel for Appellants argued that Appellees'

"analysis fails as a matter of law":

> What the parents are seeking to do is
> to use the theory of alter ego as a shield.
> It's not a shield. Alter ego is a sword. .
> . . A claim against a defendant based on
> alter ego is not a substantive claim. It is
> simply a method to collect. Trying to
> create a defense on the theory of alter ego
> simply doesn't lie. The cases don't
> recognize it. You have a change in
> ownership of the assets, a change in title,
> a change in liability.
>
> . . . .
>
> For them to say that there was
> consideration to their son and consequently
> consideration to the debtor entities doesn't
> work. It simply fails. If that were to be
> the case, every Ponzi scheme, every Bernie
> Madoff, every Robert Rood[,] would be able
> to insulate his money and transfer it to
> family members in a situation like that,
> like we have in this case where he has
> treated money as his own. Just because Mr.
> Rood has treated money as his own doesn't
> mean that the recipients are able to defend
> on that basis.

(*Id.* at 22-24).

At the conclusion of the hearing, the bankruptcy court orally granted Appellees' motion:

> I'm inclined to grant the defendants' motion for summary judgment on the basis of this record that we have today, and I'm also going to give [Appellees' counsel] something that you may not want . . . , which is this. [Appellants' counsel] will have the cleanest appeal known to mankind.
>
> I'm going to issue an order; this is a final order and there's no just reason for delay. We'll deal with the issues now. I'm not as convinced as you are about the alter ego theory but I would welcome the opinion of the fourth floor on the issue. I'll grant your clients' motions.

(*Id.* at 33).

The following day, the court issued a written order granting Appellees' motion for summary judgment, finding "no genuine issues of material fact as they relate to Grace Ann Rood and Robert F. Rood, III, and that [they] are entitled to judgment . . . as a matter of law," and denying Appellants' cross-motion.   (ECF No. 1, Attach. 1, at 2).[4]   After timely

---

[4] The bankruptcy court certified its order as final pursuant to Bankruptcy Rule 7054, and therefore subject to immediate appellate review, finding "no just reason for delay." (ECF No. 1, Attach. 1).  *See In re Rood*, 426 B.R. at 557-58 (citing *In re Wood & Locker, Inc.*, 25 F.3d 1045, 1994 WL 261251, at *2 (5th Cir. 1994) (unpublished) (appeal from bankruptcy order disposing of some, but not all, claims reviewable where bankruptcy court certifies its dismissal as a final order pursuant to Bankruptcy Rule 7054 and expressly finds "no just reason for delay") (quoting *Matter of Wood & Locker, Inc.*, 868 F.2d 139, 144 (5th

14

noting an appeal, Appellants filed an appellate brief raising the following issues:

> 1. Did the Bankruptcy Court err in granting the motion for summary judgment of Robert F. Rood, III[,] and Grace Rood?
>
> 2. Did the Bankruptcy Court err in failing to grant the [Appellants'] Cross Motion for summary judgment?

(ECF No. 7, at 7).

## II. Standard of Review

The district court reviews a bankruptcy court's findings of fact for clear error and conclusions of law *de novo*. *In re Official Comm. of Unsecured for Dornier Aviation (N. Am.), Inc.*, 453 F.3d 225, 231 (4th Cir. 2006). Because the grant of summary judgment is a legal question, it is reviewed *de novo* under Fed.R.Civ.P. 56. *See Tidewater Fin. Co. v. Williams*, 341 B.R. 530, 533 (D.Md. 2006) (citing *Century Indemnity Co. v. Nat'l Gypsum Co. Settlement Trust (In re Nat'l Gypsum Co.)*, 208 F.3d 498, 504 (5th Cir. 2000)).

Federal Rule of Civil Procedure 56 applies to adversary proceedings in bankruptcy cases pursuant to Fed.R.Bankr.P. 7056. It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any

---

Cir. 1989)); *see also In re Chateaugay Corp.*, 922 F.2d 86, 91 (2nd Cir. 1990) (applying Rule 54(b) to adversary proceedings by virtue of Bankruptcy Rule 7054, which incorporates Rule 54(b)); *In re Boca Arena, Inc.*, 184 F.3d 1285, 1287 (11th Cir. 1999) (same, collecting cases)).

material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see also JKC Holding Co. LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *See Scott v. Harris*, 550 U.S. 372 (2007); *Emmett*, 532 F.3d at 297. A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. *Celotex Corp.*, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Id*. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 254; *Celotex Corp.*, 477 U.S. at 324. "A mere scintilla of proof, however,

16

will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249-50 (citations omitted).

When faced with cross-motions for summary judgment, as in this case, the court must consider "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir.), *cert. denied*, 540 U.S. 822 (2003) (internal quotation marks omitted); *see also havePower, LLC v. Gen. Elec. Co.*, 256 F.Supp.2d 402, 406 (D.Md. 2003) (citing 10A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2720 (3rd ed. 1983)). The court reviews each motion under the familiar standard for summary judgment. The court must deny both motions if it finds there is a genuine issue of material fact, "[b]ut if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment." 10A Federal Practice & Procedure § 2720.

## III. Appellees' Motion for Summary Judgment

Although the bankruptcy court has provided no explanation as to the findings of fact and conclusions of law underlying its decision, it clearly adopted Appellees' alter ego argument.  In the motion papers filed in the court below and in their appellate briefs before this court, the parties have assumed that the Debtor Entities at issue are the alter egos of Debtor.  There has been no explicit judicial determination, however, as to whether any of the various entities involved in this case is an alter ego of Debtor or that circumstances warrant piercing the corporate veil, and the appellate record is insufficient for this court to conclude that the apparent implicit finding of the bankruptcy court to that effect was proper.

In Maryland, corporate shareholders "generally are not held individually liable for debts or obligations of a corporation except where it is necessary to prevent fraud or enforce a paramount equity." *Bart Arconti & Sons v. Ames-Ennis*, 275 Md. 295, 310 (1975).  The Court of Appeals of Maryland has identified three discrete circumstances in which a corporate entity may be disregarded:

> *First*.  Where the corporation is used *as a mere shield for the perpetration of a fraud*, the courts will disregard the fiction of separate corporate entity.
>
> *Second*.  The courts may consider a corporation as unencumbered by the fiction

18

> of corporate entity and deal with substance rather that form as though the corporation did not exist, *in order to prevent evasion of legal oblgations.*
>
> *Third.* Where the stockholders themselves, or a parent corporation owning the stock of a subsidiary corporation, *fail to observe the corporate entity, operating the business or dealing with the corporation's property as if it were their own*, the courts will also disregard the corporate entity for the protection of third persons.

*Hildreth v. Tidewater Equipment Co., Inc.* 378 Md. 724, 734 (2003) (quoting Herbert M. Brune, Jr., MARYLAND CORPORATION LAW AND PRACTICE, § 371 at 384 (revised ed. 1953)) (internal quotation marks omitted; emphasis in original).

The third of these circumstances "embodies what is sometimes called the 'alter ego' doctrine." *Hildreth*, 378 Md. at 735. Courts apply this doctrine "'with great caution and reluctance' and only in 'exceptional circumstances.'" *Id.* (quoting William Meade Fletcher, FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS, § 41.10 at 574-76 (Rev. Vol. 1999)). Application of the doctrine requires a showing of:

> (1) "complete domination, not only of the finances, but of policy and business practice in respect to the transaction so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own," (2) that "such control [was] used by the defendant to commit fraud or wrong, to perpetrate the violation of the statutory or other positive legal duty, or dishonest and unjust act in contravention of the

19

plaintiff's legal rights," and (3) that such "control and breach of duty proximately caused the injury or unjust loss."

*Id.* (quoting Fletcher, at 583-86). While there is "no universal rule as to specific criteria that courts will consider in determining whether to apply the doctrine," common factors include:

> (1) whether the corporation is inadequately capitalized, fails to observe corporate formalities, fails to issue stock or pay dividends, or operates without a profit, (2) whether there is commingling of corporate and personal assets, (3) whether there are non-functioning officers or directors, (4) whether the corporation is insolvent at the time of the transaction, and (5) the absence of corporate records. [Fletcher,] § 41.30 at 625-28.

*Id.* at 735-36.[5] The party seeking to pierce the corporate veil bears the burden of proof. *See Turner v. Turner*, 147 Md.App. 350, 426 (2002) (citing *Damazo v. Wahby*, 259 Md. 627, 634 (1970)).

---

[5] The Court of Appeals of Maryland has "agree[d] . . . with other jurisdictions" holding that veil piercing "principles apply to members of LLCs." *Allen v. Dackman*, 413 Md. 132, 153 (2010) (citing, *inter alia*, *Ditty v. CheckRite, Ltd., Inc.*, 973 F.Supp. 1320, 1335 (D.Utah 1997) ("While there is little case law discussing veil piercing theories outside the corporate context, most commentators assume that the doctrine applies to limited liability companies."); *see also Baltimore Line Handling Co. v. Brophy*, Civ. No. WDQ-09-3018, 2010 WL 3447657, at *2-3 (D.Md. Aug. 30, 2010) (considering veil piercing claim related to limited liability company under Maryland law); *RaceRedi Motorsports, LLC v. Dart Machinery, Ltd.*, 640 F.Supp.2d 660, 669-70 (D.Md. 2009) (same).

20

To prevail on their motion for summary judgment, the burden was on Appellees to demonstrate that circumstances were presented justifying application of the veil piercing doctrine. In their brief, Appellees point to the facts that the bankruptcy court previously found that certain entities were the alter egos of Debtor, *i.e.*, in its memorandum of decision granting the preliminary injunction, and that Appellants, relying on Ms. Hillman's expert report, have argued in favor of piercing the corporate veils of all business entities related to Debtor throughout the adversary proceeding. The bankruptcy court's preliminary injunction ruling, however, (a) does not explicitly find that any business entity is Debtor's alter ego; (b) does not apply to Blue Horseshoe, The Source, and Level One, the Debtor Entities at issue here, as they are not defendants in the adversary proceeding; and (c) is merely a finding as to Appellants' likelihood of success on the merits. *See In re Rood*, 426 B.R. at 549 ("Insofar as the ultimate merits are concerned, the bankruptcy court found only that Mr. Rosen and SMCRT met their burden of establishing a likelihood of success on the merits, as any court is required to do prior to issuing a preliminary injunction."). Indeed, while a trial has apparently been held in the adversary proceeding and post-trial briefing has concluded, Judge Mannes has not yet issued a final decision.

Nor is Ms. Hillman's expert report, by itself, conclusive evidence that veil piercing is warranted. Although she submitted a declaration attesting to certain aspects of her expert report, the report itself is unsworn and consists essentially of conclusions Ms. Hillman has drawn from her review of documents and other evidence in this case. *See generally Turner v. Human Genome Science, Inc.*, 292 F.Supp.2d 738, 743-44 (D.Md. 2003) (striking unsworn expert report that "merely summarizes the conclusions contained in [the expert's] deposition testimony"); *cf. Solis v. Prince George's County*, 153 F.Supp.2d 793, 798 (D.Md. 2001) ("As to an expert opinion, 'an affidavit that states facts on which the expert bases an opinion satisfies Fed.R.Civ.P. 56(e) even though the expert does not attach the data supporting the facts.") (quoting *M & M Medical Supplies and Service, Inc. v. Pleasant Valley Hosp., Inc.*, 981 F.2d 160, 166 (4th Cir. 1992)). Neither party has presented any evidence supporting those conclusions or demonstrating the manner in which they were drawn, and considering the extraordinary nature of the doctrines at issue, the current record is insufficient to demonstrate an absence of factual dispute. While it may be that Ms. Hillman has testified at other hearings in the adversary proceeding – and, at those hearings, documents may have been introduced that would support her opinion as to the Debtor Entities being alter egos of Debtor

22

– this court cannot determine from the docket whether there are other portions of the bankruptcy court record that would conclusively fill the gaps.

To the extent the bankruptcy court may have adopted Appellees' judicial estoppel argument, its ruling was in error. Under some circumstances it might be appropriate to employ the doctrine of judicial estoppel in rendering summary judgment. *See Lowery v. Stovall*, 92 F.3d 219 (4th Cir. 1996). This, however, is not one of those cases. While Appellants may have argued that the entities are alter egos of Debtor, their position thus far in the litigation does not warrant imposition of judicial estoppel. As explained by the Fourth Circuit:

> While "the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle," *New Hampshire v. Maine*, 532 U.S. 742, 750, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) (internal quotation marks and alteration omitted), in this circuit we generally require the presence of the following elements:
>
>> First, the party sought to be estopped must be seeking to adopt a position that is inconsistent with a stance taken in prior litigation. The position at issue must be one of fact as opposed to one of law or legal theory. Second, the prior inconsistent position must have been accepted by the court. Lastly, the party against whom judicial estoppel is to be applied must have intentionally misled the court to

> gain unfair advantage. This bad
> faith requirement is the
> determinative factor.

*Whitten v. Fred's, Inc.*, 601 F.3d 231, 241 (4th Cir. 2010)

(quoting *Zinkand v. Brown*, 478 F.3d 634, 638 (4th Cir. 2007)).

Here, the alter ego theory has not yet been definitively

accepted by the court and, most decisively, there has been no

showing of bad faith on the part of Appellants. Moreover, the

mere fact that Appellants have taken the position that the

Debtor Entities are the alter egos of Debtor cannot substitute

for a judicial finding that there are no material disputes of

fact on that issue. Both of the fraudulent conveyance claims

rest on the alter ego issue; as a result, the judgment of the

bankruptcy court granting summary judgment in favor of Appellees

will be reversed with respect to those claims.

The bankruptcy court properly granted summary judgment,

however, as to the conversion claim against Mr. Rood. In their

primary brief, as in the court below, Appellants scarcely

address this claim, arguing only that it was among the claims

that Appellees "wrongly suggest[ed]" was defeated under their

veil piercing theory. (ECF No. 7, at 18). This is a

mischaracterization of Appellees' argument. Before the

bankruptcy court, both in the memorandum in support of their

motion and at oral argument, Appellees argued at length that Mr.

Rood was entitled to summary judgment on this count because

24

money could not be the subject of the conversion claim, and the only remaining property that could potentially be implicated – *i.e.*, the Cadillac, which was purchased by and titled in the name of Kore – was freely given to Mr. Rood for his use and was promptly turned over upon demand. (ECF No. 1, Attach. 13, at 18-21; ECF No. 5, Attach. 1, at 10-13). Those same arguments were repeated, essentially verbatim, in Appellees' brief before this court. (ECF No. 11, at 21-25). In their reply brief, Appellants merely stated that they "stand on the arguments raised in their principal brief in support of their claim." (ECF No. 12, at 2). Appellants' initial "arguments," however, do not address the relevant issues, nor does the record otherwise reflect that Mr. Rood could be liable for conversion. *See In re Rood*, 426 B.R. at 554 (affirming dismissal of conversion claim as to Mrs. Rood).[6]

---

[6] Three of the remaining counts were improperly designated in the adversary complaint as independent causes of action when, in fact, they are remedies. "Turnover," under 11 U.S.C. § 542, is "a remedy available to debtors to obtain what is acknowledged to be property of the bankruptcy estate." *In re Asousa P'ship.*, 264 B.R. 376, 384 (Bankr.E.D.Pa. 2001); *see also Walker v. Weese*, 286 B.R. 294, 299 (D.Md. 2002) ("Requiring turnover is merely the bankruptcy court's means of enforcing its decisions, and it is therefore equitable in nature."); *In re Rosenzweig*, 245 B.R. 836, 839-40 (N.D.Ill. 2000) ("turnover is . . . the remedy to obtain what is acknowledged to be property of the bankruptcy estate."). Similarly, the tenth count of the complaint, labeled "recovery of fraudulent conveyances," is merely a request for a remedy – namely, that "[t]he transfers to Defendants . . . be avoided and the corporate assets of the Debtor Entities or value thereof [be] returned to the Trustee."

## IV.   Appellants' Cross-Motion for Summary Judgment

Denial of a motion for summary judgment is ordinarily not appealable.   As the Supreme Court of the United States recently explained in *Ortiz v. Jordan*, 131 S.Ct. 884, 891 (2011):

> The jurisdiction of a Court of Appeals under 28 U.S.C. § 1291 extends only to "appeals from . . . final decisions of the district courts." Ordinarily, orders denying summary judgment do not qualify as "final decisions" subject to appeal. Summary judgment must be denied when the court of first instance determines that a "genuine dispute as to [a] material fact" precludes immediate entry of judgment as a matter of law. Fed. Rule Civ. Proc. 56(a). Such rulings, we have observed, are "by their terms interlocutory." *Liberty Mut. Ins. Co. v. Wetzel*, 424 U. S. 737, 744, 96 S.Ct. 1202, 47 L.Ed.2d 435 (1976).

Here, the appeal from the denial of summary judgment comes as part of an appeal from the grant of summary judgment to an opposing party.   Furthermore, it appears to have been included in the bankruptcy court's certification pursuant to Rule 7054:

> Bankruptcy Rule 7054 makes Fed.R.Civ.P. 54(b) applicable in bankruptcy adversary proceedings. *See Reiter v. Cooper*, 507 U.S. 258, 265 n. 2, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993). Rule 54(b) allows a court to enter final judgment on one or more claims in a multi-claim action, even where other

---

(ECF No. 1, Attach. 4, at ¶ 182).   Moreover, the twelfth count, for injunctive relief, is clearly a remedy, not an independent cause of action.   *See Orteck Intern, Inc. v. Transpacific Tire Wheel, Inc.*, 704 F.Supp.2d 499, 521 (D.Md. 2010).   In each case, the requested relief may or may not be available to Appellants, depending on the outcome of their fraudulent conveyance claims.

> claims remain unresolved, thereby allowing
> an appeal. *Braswell Shipyards, Inc. v.
> Beazer East, Inc.,* 2 F.3d 1331, 1335 (1993).
> Rule 54(b) certification is the exception
> rather than the norm, and it should not be
> granted routinely or as an accommodation to
> counsel. *Id.* Whether a Rule 54(b)
> certification is properly granted involves a
> two-step analysis. First, the judgment must
> be final "in the sense that it is 'an
> ultimate disposition of an individual claim
> entered in the course of a multiple claims
> action.'" *Id.* (*quoting Sears, Roebuck & Co.
> v. Mackey*, 351, U.S. 427, 436 (1956)).
> Second, there must be no just reason for the
> delay in entering the judgment. *Braswell
> Shipyards*, 2 F.3d at 1335 (*citing Curtis-
> Wright Corp. v. Gen. Elec. Co.,* 446 U.S. 1,
> 8, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980)). An
> appellate court reviews the Rule 54(b)
> certification for an abuse of discretion.
> *Braswell Shipyards*, 2 F.3d at 1336.

*In re Barahona*, Civ. No. DKC 05-2122, 2005 WL 5759546, at *2 (D.Md. Nov. 23, 2005).

It is not at all clear that the bankruptcy court would have certified the denial of summary judgment as final had it not been part of the now-reversed ruling on Appellees' motion for summary judgment. Even if it would have, this court finds that it would have been an abuse of discretion to do so. The certification procedure is not meant to be a mechanism to obtain an advisory opinion. The denial of summary judgment, by itself, was not and is not an ultimate disposition and should not be the subject of a Rule 7054 certification.

In their cross-motion for summary judgment, Appellants
sought judgment as to all remaining claims against Appellees,
but the argument they presented was directed only toward the
claims for fraudulent conveyance. Specifically, they asserted
that Appellees' acknowledgment that they received a number of
checks and wire transfers from the Debtor Entities "warrant[ed]
the entry of summary judgment in favor of [Appellants]." (ECF
No. 1, Attach. 31, at 13). At oral argument, they asked the
bankruptcy court to grant summary judgment *sua sponte* based on a
finding that Appellees' alter ego argument "fails as a matter of
law." (ECF No. 5, Attach. 1, at 30). On appeal, Appellants
take issue with the bankruptcy court's implicit adoption of the
alter ego theory, arguing that "[c]ourts have consistently held
that the use of an *alter ego* theory is not a shield to liability
for a fraudulent conveyance," but rather it "is only to be used
as a sword when necessary to prevent fraud to hold a corporate
officer or shareholder personally liable for debts of the
corporation." (ECF No. 7, at 20) (emphasis in original).

Insofar as this argument relies on a finding that the
transfers from the Debtor Entities to Appellees were, in fact,
fraudulent conveyances, it begs the question. Indeed, Appellees
contend that these were not fraudulent conveyances because they
were payments made by Debtor in satisfaction of an antecedent
debt. Moreover, application of the alter ego doctrine may not

be as confined as Appellants suggest.  As noted previously, Maryland courts "will, in a proper case, disregard the corporate entity and deal with substance rather than form, as though a corporation did not exist." *Bart Arconti*, 275 Md. at 310.  Such a case is presented not only when it is "necessary to prevent fraud," but also "to enforce a paramount equity." *Id.* at 312. The alter ego doctrine may be applied "where the corporate entity has been used as a subterfuge and to observe it would work an injustice, the rationale being that if the shareholders or the corporations themselves disregard the proper formalities of a corporation, then the law will do likewise as necessary to protect individual and corporate creditors." *Hildreth*, 378 Md. at 735 (quoting Fletcher, at 574-76) (internal quotation marks omitted).  Appellants continue to rely on the equitable doctrine of corporate veil piercing in their claims against all defendants in the adversary proceeding.  If ultimately successful, they may succeed in having the assets of the Debtor Entities considered to be assets of the Debtor and included in his bankruptcy estate.  Until those issues are resolved, however, any determination as to the effect such a finding might have on the claims against Appellees would be premature.

**V.   Conclusion**

For the foregoing reasons, the judgment of the bankruptcy court granting summary judgment will be affirmed in part and

reversed in part, the appeal from the order denying summary judgment will be dismissed, and the case will be remanded to that court for further proceedings. A separate order will follow.

```
                          _____/s/_____
                          DEBORAH K. CHASANOW
                          United States District Judge
```